IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-02956-SKC-STV

MATTHEW GASSER,

    Plaintiff,

V.

SHERYL COFFEY, and
THE TOWN OF CASTLE ROCK,

    Defendants.

## ORDER RE: MOTIONS TO DISMISS (DKTS. 20, 22)

In August 2023, the Human Resources Department for Defendant Town of Castle Rock, Colorado (Town), was notified of a rumor that a Town employee was manipulating procurement card receipts submitted to the Town's finance department. Dkt. 6, ¶8.[1] In response to the rumor, Defendant Sheryl Coffey hired FORVIS, a forensic accounting investigation group, to examine the Town's accounting practices. *Id*. at ¶11. In addition, the Town asked Detective Mike Williams of the Castle Rock police department to conduct a criminal investigation. *Id*. at ¶12. Based on Detective Williams' investigation, the Town ultimately concluded that the

---

[1] The Court takes these allegations to be true for purposes of evaluating the Motions to Dismiss.

1

manipulated receipts cost it $3,000 in Colorado sales tax it should not have paid given its tax-exempt status. *Id.* at ¶16. The FORVIS investigation, however, cost the Town's taxpayers between $100,000 to $150,000. *Id.* at ¶17.

Pertinent here, both FORVIS and Detective Williams also determined that Plaintiff Matthew Gasser, a Senior Athletics Supervisor for the Town's Parks and Recreation Department, had not engaged in any financial wrongdoing. *Id.* at ¶¶6, 14, 15. Nevertheless, after reading a personal text message between Plaintiff and a co-worker regarding the investigation, Defendant Coffey "attempted to cover the gross spending by targeting Plaintiff and falsely accusing Plaintiff" of stealing from the Town. *Id.* at ¶¶20-21. Without consulting Plaintiff or his supervisor first, Defendant Coffey drafted a termination letter containing numerous false statements and then sent it to Plaintiff's supervisor for his signature. *Id.* at ¶¶22-24.

According to the Complaint, despite Plaintiff addressing all the allegations in the letter and having the support of his supervisor, Defendant Coffey continued to push for Plaintiff's termination. *Id.* at ¶¶39-42. And Detective Williams, who was apparently in a romantic relationship with Defendant Coffey, allegedly spoke with the Town Manager regarding his opinions on Plaintiff's character. *Id.* at ¶¶58, 65. Plaintiff alleges that but for Detective Williams' romantic relationship with Defendant Coffey, Detective Williams would not have offered his personal opinions— as opposed to actual evidence of wrongdoing—or recommended Plaintiff be terminated. *Id.* at ¶¶59-64, 69. This recommendation was the deciding factor for the

2

Town Manager in his decision to terminate Plaintiff's employment. *Id.* at ¶59. But when the Town Manager instead asked him to resign, Plaintiff refused and has maintained his employment with the Town. *See Id.* at ¶¶81-107.

Plaintiff filed this action asserting claims against the Town and Defendant Coffey for violations of his First Amendment rights, breach of express and implied contract, defamation, tortious interference with contract, and tortious interference with prospective advantage.[2] Dkt. 6. The Town and Defendant Coffey have filed separate motions seeking dismissal of the claims against them. Dkts. 20, 22.

The matter is fully briefed and no hearing is necessary. Having considered the Complaint, the Motions to Dismiss, the related filings, and the controlling law, the Court GRANTS the Town's Motion in part and DENIES Defendant Coffey's Motion.

## B. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept

---

[2] Plaintiff also asserts a claim for "injunctive relief." Dkt. 6 at ¶¶194-200. The Town argues, and Plaintiff concedes, that injunctive relief need not be asserted as an independent claim and is instead a remedy to be sought by prevailing parties. Therefore, the Court will dismiss this claim.

as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## C. ANALYSIS

**1.   Defendant Coffey's Motion to Dismiss (Dkt. 20)**

In her Motion, Defendant Coffey contends this Court lacks jurisdiction to consider the matter because Plaintiff's allegations do not establish that her actions were willful and wanton such that the Colorado Governmental Immunity Act (CGIA or Act) is inapplicable. She further contends, even if Plaintiff's allegations did establish willful and wanton behavior, the Complaint is conclusory and speculative, and therefore, does not state any claims for relief. The Court respectfully disagrees on both counts.

### a.  Subject Matter Jurisdiction

Defendant Coffey—relying on *Martinez v. Estate of Bleck*, 379 P.3d 315 (Colo. 2016)—contends she is entitled to immunity under the CGIA because the Complaint contains no allegations that she exhibited a conscious disregard for *physical* danger to Plaintiff. Dkt. 20, p.8-9. Defendant's reliance on *Martinez* is misplaced.

The CGIA grants public employees immunity from tort liability in certain circumstances. *See* Colo. Rev. Stat. § 24-10-102. Pertinent here, § 24-10-118(2)(a) of the Act provides:

> A public employee shall be immune from liability *in any claim for injury ... which lies in tort or could lie in tort ...* and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing such injury was willful and wanton*.

(Emphasis added.)

5

If the Court were to accept Defendant Coffey's argument that a risk of physical injury is required to sufficiently allege willful and wanton behavior, it would directly contravene the plain language of the statute. The statute is clear that a public employee has no immunity "from *any claim for injury* that lies in tort. . . or could lie in tort." § 24-10-118(2)(a). And the CGIA broadly defines "injury" to include "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort." § 24-10-103(2). Thus, the plain terms of the statute express an intent to include any type of injury that would be actionable in tort not just those involving risk of physical injury. *See, e.g.*, *Lee v. Colo. Dep't of Health*, 718 P.2d 221, 230 (Colo. 1986) (holding that loss of consortium is an "injury" under the CGIA).

To be sure, the Colorado Court of Appeals recently rejected the argument Plaintiff asserts here in *Cynthia Southway & Hayden Southway v. Crone*, No. 24CA0219, 2024 WL 5162947 (Colo. App. Dec. 19, 2024). There, the defendant also cited *Martinez* for the principle that risk of physical injury was required to overcome the CGIA. *Id*. The appellate court first noted that the Colorado Supreme Court in *Martinez* "specifically declined to adopt a single definition for willful and wanton conduct under the CGIA." *Id*. at *5. The court then explained that "[t]o the extent *Martinez* references risks to a plaintiff's physical safety, it didn't do so to limit the applicability of the 'willful and wanton' exception to circumstances involving a risk of physical harm." *Id*. Rather, the *Martinez* court referenced risk to a plaintiff's physical

6

safety "simply because the plaintiff's claim involved physical injury from the discharge of a weapon." *Id*. The Court agrees with the Colorado Court of Appeals. *See Sigalla v. Meidhof*, No. 23CA1810, 2025 WL 415470, at *7 (Colo. App. Feb. 6, 2025), *as modified on reh'g* (May 1, 2025) (applying the *Martinez* standard for willful and wanton conduct in a defamation case).

Turning to Plaintiff's allegations and construing them in the light most favorable to Plaintiff, the Court is satisfied he has sufficiently alleged willful and wanton behavior by Defendant Coffey. For example, he plausibly alleges Defendant Coffey, while knowing that Plaintiff had been cleared of any financial wrongdoing, nevertheless accused him of financial crimes. *See* Dkt. 6, ¶¶118, 119(a), (b), (c), 120. Plaintiff has expressly alleged Defendant Coffey knew her statements were false when she sent the letter to Plaintiff's supervisor and the Town. *Id*. at ¶¶120, 135. And the allegations create a reasonable inference that because she knew her statements were false, she intentionally recruited her romantic partner, Detective Williams, to offer his irrelevant personal opinions on Plaintiff's character. *Id*. at ¶¶58-61, 69.

These inferences and her alleged awareness of the falsity, coupled with the fact that Defendant Coffey made the statements to the Town and had Detective Williams offer his opinions to the Town, "are sufficient to provide a reasonable inference that [Defendant] acted with reckless disregard of the consequences of her conduct." *McDonald v. Wise*, 769 F.3d 1202, 1219 (10th Cir. 2014). Further, her alleged actions

7

in this regard are relevant to each of the three torts Plaintiff asserts against her. Thus, Plaintiff has satisfied the heightened pleading standard to overcome the CGIA at this stage. *Id.* at 1218. ("Where a complaint includes specific factual allegations that nudge a claim across the line from conceivable to plausible, a claim that an employee acted willfully and wantonly must await determination at trial on the merits.") (cleaned up).

### b. Failure to State a Claim

As to Defendant Coffey's second contention, the Court notes her Motion does not provide specific analysis or argument as to each claim asserted against her but rather, makes general arguments—with precious few examples—that Plaintiff's allegations are conclusory, speculative, and fail to state a claim. This contention is problematic on several grounds.

Initially, Defendant Coffey's argument is woefully underdeveloped. And because Defendant did not see fit to address each claim, the Court has no obligation to do so.[3] *See A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("In addition, the qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes."); *Tillmon v. Douglas Cty.*, 817

---

[3] And her attempts to address each claim in her Reply are of no avail. Parties cannot raise arguments for the first time in a reply brief, and therefore, the Court has not considered these contentions. *In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1113 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").

8

F. App'x 586, 589-90 (10th Cir. 2020) (declining to reach qualified immunity where "defendants' analysis of qualified immunity in that motion [to dismiss] was cursory at best.").

Next, the few allegations that Defendant characterizes as speculative and conclusory simply are not. For example, Plaintiff's contention that Defendant was "personally offended by remarks Plaintiff made via text message," is itself a fact and, contrary to Defendant's argument, needs no further factual enhancements. The same is true of Plaintiff's allegation that Defendant Coffey had a "personal animus" against him. That Defendant contests the accuracy of these factual allegations does not make them speculative or conclusory—it merely bespeaks a factual dispute. Whether these allegations will be borne out requires discovery and perhaps resolution by the finder of fact. Thus, Defendant Coffey's request to dismiss the claims against her are denied.

**2.    The Town's Motion to Dismiss (Dkt. 22)**

The Town contends dismissal is warranted because Plaintiff has failed to sufficiently allege a claim for First Amendment retaliation or the existence of a contract. The Court agrees Plaintiff has failed to sufficiently allege a breach of contract but concludes dismissal of his First Amendment claim is not appropriate at this juncture.

### a. First Amendment Retaliation

During the FORVIS investigation, Defendant Coffey gained access to the following text message exchange between Plaintiff, who was using his personal cellphone,[4] and a co-worker:

> *Matt- "I just finished up at volleyball. How was the state of the town? Assuming it was all about taxes and witch hunts."*
>
> *Kent- "Lol" "It was just very awkward, because Kristen read would not even look at me, and she walked by me eight times; Trish was there and her state of the town was about sales tax, so it is clear that she's on a witchhunt" "How did volleyball go tonight?"*
>
> *Matt- "Went really good. Small group and volleyball is probably the hardest one so good to get that one out first. I'm going to try to be at all of them but we'll probably need one part time athletics person." "Glad Kristen has made our work environment weird"*
>
> *Kent- "Yes A very uncomfortable environment."*

Dkt. 2-3, pp.2-3.

Plaintiff contends Defendant Coffey attempted to have him terminated because of these texts and that the Town not only did nothing to prevent her actions, but also, asked him to resign because of these messages. The Town argues Plaintiff's

---

[4] Apparently, a setting in Plaintiff's work and personal phones unintendedly allowed contents from his personal phone to upload to his work device.

10

text messages do not constitute protected speech and even if they do, the Town would have taken the same action of issuing the termination/disciplinary letter.

When government employees speak on matters of public concern, "'they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).[5] A statement is a matter of public concern, and not merely a personal grievance, "if it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138 (1983)) (cleaned up). But it is not enough for the speech to merely be related generally to a subject of public interest; rather, it must also "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 768 (10th Cir. 1984). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (citing *Connick*, 461 U.S. at 147-48).

---

[5] The "*Garcetti/Pickering*" analysis of freedom of speech retaliation claims is a five-step inquiry. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). In its Motion, the Town contests only the second and fifth prongs. Thus, the Court saves any analysis of the other elements for another day.

11

The Town contends Plaintiff's text messages were "solely on a matter of personal interest related to an issue internal to the workplace" and were "nothing more than venting about internal workplace grievances related to other individuals." Dkt. 22, p.4. While this may ultimately turn out to be true, the Court is not persuaded it can reach such a conclusion based on the Town's characterization. To be sure, Plaintiff contends he and his colleague were referencing the "State of the Town" meeting where the mayor addresses the Town and speaks on topics such as financial health and taxes. Dkt. 38, p.6. He further argues his "witch hunt" comment was regarding the FORVIS investigation and the ensuing termination of Town employees to justify the large amount of taxpayer money spent. *Id*. This does, in fact, suggest his comments were on matters of public concern. But the Court cannot reach any conclusion based solely on the pleadings.

As the Supreme Court and the Tenth Circuit have made clear, the inquiry into whether speech is a matter of public concern must be determined on the entire record. Therefore, this question is better resolved after meaningful discovery.

Turning to the Town's contention that it would have taken the same action even in the absence of protected speech, the Cout again concludes dismissal is not appropriate on this basis. The Court cannot determine from the four corners of the Complaint what the Town would or would not have done had it not discovered Plaintiff's text messages. This is inherently a factual question, which will require discovery and, perhaps, testimony or declarations. And the Town's reliance on the

12

other accusation in the disciplinary letter is not persuasive because it overlooks Plaintiff's position that these accusations were false or mischaracterized the facts and that the Town was informed as such. Consequently, the Court concludes dismissal of Plaintiff's First Amendment retaliation claim is not appropriate at this stage of the proceedings.

### b. Breach of Contract

According to the allegations, when FORVIS initiated its investigation into the manipulated receipts, Plaintiff and other employees received a Confidentiality Notice regarding their participation in the investigation. Pertinent to this Court's analysis, the Notice stated:

> Importantly, the Town has a non-retaliation policy, which means you cannot be retaliated against for participating in this investigation. If you experience retaliation as a result of participation in this investigation, please promptly report same to Human Resources. As well, you may not retaliate against any employee based on any information you gain from participation in this investigation.

Dkt. 2-6.[6] Plaintiff contends the Notice consitutes a contract between him and the Town, and that the Town breached the contract when it did nothing to prevent Defendat Coffey from retaliating against him. The Town first argues the Notice did

---

[6] Because this document was attached to the Complaint and is central to the allegations, the Court may consider it without converting this Motion to one for summary judgment. *United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018) ("Documents attached to the pleadings, however, are subject to full consideration in a court's review of a Rule [12(b)(6)] motion.")

not constitute a contract, express or implied. But the Court need not address this because it agrees with the Town's second argument: even if there was a contract, Plaintiff has not alleged a failure to perform by the Town.[7]

Here, under the specific language of the Notice, the Town had an obligation not to retaliate against Plaintiff because of his participation in the investigation. Dkt. 2-6. As alleged, however, Defendant Coffey's actions were not based on Plaintiff's participation, but rather were allegedly motivated by information she learned during the investigation.

In response, Plaintiff relies on the Notice language stating, "[Y]ou may not retaliate against any employee based on any information you gain from participation in this investigation." He argues that provision directly prohibits Defendant Coffey's conduct as a Town employee, and therefore, constitues a breach by the Town. The flaw in Plaintiff's contetion, however, is that the cited language does not create an obligation on the part of the Town. This language is specifically an obligation of Town employees, inclduing Plaintiff, to refrain from retaliation based on information they obtain from their participation in an investigation.

---

[7] Under Colorado law, to establish a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract; (2) performance by them or some justification for their nonperformance; (3) failure to perform by defendant; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Because there are no allegations in the Complaint to establish that the Town retaliated against Plaintiff because of his participation in the investigation, his claims for breach of contract will be dismissed without prejudice.

*   *   *

For the reasons shared above, the Court respectfully DENIES Defendant Coffey's Motion to Dismiss (Dkt. 20) and GRANTS IN PART and DENIES IN PART the Town's Motion to Dismiss (Dkt. 22). Plaintiff's claims for breach of contract and injunctive relief are dismissed.

IT IS FURTHER ORDERED within 14 days of this Order, the Parties shall contact Magistrate Judge Scott T. Varholak's chambers to reset the Scheduling Conference.

DATED: August 14, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge

15